**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION**

| | |
|---|---|
| STAGE ONE, INC., <br><br>              Plaintiff, <br><br> vs. <br><br> HOSPITALITY LODGING SOUTH, LLP, a Texas Company, and ASPEN LIMITED PARTNERSHIP, a Wyoming Limited Partnership, <br><br>              Defendants. | CV-13-16-BU-CSO <br><br><br> **ORDER ADDRESSING SUMMARY JUDGMENT MOTION** |

This is a contract and tort action arising out of business dealings. Plaintiff Stage One, Inc. ("Stage One") claims that Defendants Hospitality Lodging South, LLP ("HLS") and Aspen Limited Partnership ("ALP") are liable for damages resulting from alleged breaches of contract, breaches of fiduciary duty, and fraudulent or negligent misrepresentations. *See Second Amend. Cmplt (ECF 29)[1]*.

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation,*

1

HLS and ALP move for partial summary judgment.  *ECF 47.*

## I.  <u>BACKGROUND</u>

ALP owns the Stage Coach Inn, a hotel located in West Yellowstone, Montana.  ALP leased bar space to Stage One, which operated a bar and casino within the hotel from 1999 through the fall of 2011.  *Scheduling O Stipulations (ECF 16) at 3.*  HLS provides management and financial services to many hotel companies, including ALP.  *Aff. Westfall (ECF 49-1) at ¶ 3.*  Ron Jensen ("Jensen"), at all relevant times, owned both ALP and HLS.

The premises was leased pursuant to a Real Property Lease Agreement dated April 1, 1999 (the "Lease").  The lease was for a term of 180 months, set monthly rent at $10,000 for the first year, and provided for an annual increase in rent commensurate with the prior year's published increase in the Consumer Price Index ("CPI").  *ECF 49-2 at 11.*  The Lease also contained a standard merger clause, which provided:

> This Lease constitutes the entire agreement and understanding between the parties hereto, with (*sic*) supersedes and cancels all

---

*§ 10.8.3.*

prior agreements between the parties hereto, with respect to all or any portion of the Premises.  No representations, except as expressly set forth or referred to herein have been made by any party to the other.  This Lease cannot be modified except in writing, signed by the party to be bound hereby (*sic*).

*Id. at 9.*

HLS employs its bookkeepers and performs its work in League City, Texas.  *ECF 49-1 at ¶¶ 4, 5.*  Around the time ALP leased the bar space to Stage One, ALP arranged for HLS to provide bookkeeping services for Stage One.  *Id. at ¶ 8; Pltf's Stmt Disputed Facts (ECF 53) at 3, ¶ 3.*  Stage One authorized HLS, through its manager Debra Westfall ("Westfall"), to write checks and pay bills on behalf of Stage One.  *ECF 16 at 3.*  HLS did not charge a fee, nor did Stage One pay a fee, for the bookkeeping services.  *ECF 49-1 at ¶ 8; Depo. Sainsbury (ECF 49-3) at 15.*  Stage One received monthly statements from its bank in West Yellowstone during the entire duration of the Lease, *ECF 16 at 3*, and began receiving monthly financial reports from HLS by 2007 or 2008.  *ECF 53 at ¶ 10; Second Amend. Cmplt (ECF 29) at ¶ 8; Depo. Doug Henning (ECF 49-5) at 4; 21; Aff. Sainsbury (ECF 53-4) at ¶¶ 6, 7.*

Rod Sainsbury became Stage One's sole shareholder sometime in 2001. *Aff. Sainsbury (ECF 53-4) at ¶ 1.* Stage One alleges that before 2001, Stage One had several shareholders, consisting of (1) Sainsbury, (2) one of Jensen's employees, and (3) several of Jensen's family members. Stage One contends that Jensen asked Sainsbury in 2001 if he would acquire all of Stage One's outstanding shares from the other shareholders. Stage One alleges that Jensen promised to assist Sainsbury by continuing to provide bookkeeping services through HLS, and by having ALP absorb Stage One's expenses for utilities and entertainment costs. *Id. at ¶ 3.* Sainsbury states that he acquired the remaining outstanding shares based on these representations. *Id. at ¶ 4.*

After execution of the Lease, ALP did not collect the CPI rent increase for several years, so the monthly rent remained at $10,000. *Defts' Stmt Undisputed Facts (ECF 49) at ¶ 12.* In 2008, ALP began collecting the increased rent pursuant to the CPI provision in the Lease. *Aff. Debra Westfall (ECF 49-1) at ¶ 17.* ALP increased the monthly rent from $10,000 to $12,758.93 and billed this amount to

Stage One in December 2008. The increase was recorded on the December 2008 HLS financial statement. That same month, ALP also aggregated the CPI increases for the prior years into a single sum of $99,737.36, and billed this aggregated amount to Stage One as a single account payable. HLS recorded this charge on the December 2008 financial statement as "Rent Payable – Hotel." *ECF 49 at ¶12.*

Doug Henning ("Henning"), Stage One's manager, reviewed HLS's monthly financial statements and reported to Sainsbury. *Depo. Henning (ECF 49-5) at 20-21.* Beginning in the spring of 2007, Henning noticed unexpected charges/debits occurring on the monthly summaries from HLS, and brought the discrepancy to Sainsbury's attention. *Id.; Second Amend. Cmplt (ECF 29) at ¶ 8.* Henning specifically noticed the increase in rent above $10,000, and the $99,737.36 for back rent due on the December 2008 financial statement, and brought these charges to Sainsbury's attention. *Depo. Henning (ECF 49-5) at 21-22.* When Sainsbury inquired about them to Westfall and Jensen, he was told they were charges for past rent escalations permitted by the Lease's CPI adjustment provision. *Second*

*Amend. Cmplt (ECF 29) at ¶ 8; Depo. Sainsbury (ECF 49-3) at 5.*

Sainsbury disputed the charges and directed Westfall not to fund them.

*ECF 29 at ¶ 8.* Sometime in 2007, Sainsbury noticed other charges

that he disputed, including charges for music and bands. *Depo.*

*Sainsbury (ECF 49-3) at 22-23.* Sainsbury noticed that Stage One was

paying for music and bands, did not agree that it should, but decided to

"just keep [his] mouth shut." *Id. at 23.*

The relationship between ALP and Stage One deteriorated over

the ensuing years. Disputes arose over noise complaints, use of the

lower "Barrel Bar" area of the lounge, and other issues. *See May 10,*

*2010 Email Jensen to Sainsbury (ECF 53-8); Email Exchange (ECF 49-*

*9); Depo. Henning (ECF 49-5) at 16-17; Aff. Sainsbury (ECF 53-4) at ¶*

*10; Depo. Sainsbury (ECF 49-3) at 16.* On September 1, 2011, Matthew

McLean, as counsel for ALP, sent Stage One a certified letter providing

Stage One with "notice that [Stage One] is in default of the terms of the

lease and the Landlord [ALP] intends to terminate the lease thirty (30)

days after this notice." *See ECF 49-8.*

On September 8, 2011, Stage One terminated HLS's services, and

demanded that HLS send its records, ledgers, and similar materials to Stage One's accountant. Stage One vacated the premises shortly thereafter, and filed the current lawsuit in state court on November 16, 2012. *See Cmplt (ECF 1-2)*.

Stage One's Second Amended Complaint, filed on September 23, 2013, contains eight counts pled against both Defendants as follows:

(1) Breach of Contract and/or Quasi Contract;
(2) Breach of the Implied Covenant of Good Faith/Fair Dealing;
(3) Breach of Fiduciary Duty;
(4) Negligent Misrepresentation;
(5) Fraud, Deceit, and/or Constructive Fraud;
(6) Misappropriation of Corporate Documents;
(7) Punitive Damages; and
(8) Constructive Trust.

*See ECF 29.* Defendants' pending motion seeks summary judgment on all counts with the exception of Count 6.

## II.  PARTIES' ARGUMENTS

Defendants first argue that the claims for breach of contract and breach of the implied covenant of good faith and fair dealing fail because the alleged oral contract for bookkeeping services lacks consideration. *Defts' Br. in Support of Mot. for Summary Judgment (ECF 48) at 10-11.* Defendants argue that consideration for this alleged

contract is lacking because HLS provided its bookkeeping services on a gratuitous basis, the arrangement was not reduced to writing, and Stage One never paid for the service. *Id. at 12.* Defendants also argue that consideration for this oral contract cannot be considered "part and parcel" of the Lease because that agreement was exclusively between ALP and Stage One and contained a merger clause. *Id. at 12-14.*

Second, Defendants argue that the tort claims for breach of fiduciary duty, negligent misrepresentation, and fraud, deceit, and constructive fraud are barred by the applicable statutes of limitations. *Id. at 15.* Defendants argue that these claims accrued in late 2008 or early 2009, and that Stage One has failed to bring these claims within either the two-year or three-year statute of limitations. *Id. at 20.* Defendants further argue that HLS sent monthly financial statements to Stage One containing all of the facts necessary to discover the alleged wrongs and that neither ALP nor HLS prevented Stage One from discovering the allegedly improper charges or payments. *Id. at 21-23.*

Third, Defendants argue that, under any theory, HLS did not

breach a fiduciary duty of care to Stage One. *Id. at 23.* Defendants

argue that HLS performed bookkeeping, as opposed to accounting,

services for Stage One, and that Stage One has not provided any

evidence or expert testimony establishing that HLS breached the

standard of care applicable to bookkeepers. *Id. at 24.*

Fourth, Defendants argue that ALP did not breach any duty of

care to Stage One because: (1) ALP did not provide accounting or

bookkeeping services to Stage One, and (2) ALP owed no fiduciary duty

to Stage One, nor did it have authority to pay obligations directly from

Stage One's bank account. *Id. at 26-28.* Defendants also argue that

Stage One may not obtain damages for lost profits as a result of being

evicted from the premises because Stage One did not allege in its

complaint that ALP violated the Lease – rather, Defendants argue,

Stage One's breach of contract claims only involve HLS's bookkeeping

services. *Id. at 28-30.*

In response, Stage One first argues that Jensen and Sainsbury

reached an enforceable oral agreement, supported by consideration, for

bookkeeping services and the payment by ALP of Stage One's utilities

and entertainment expenses. *Pltf's Response (ECF 52) at 8-9.* Stage One argues that Sainsbury was initially reluctant to acquire all of Stage One's stock but agreed to do so only after Jensen promised that he would help make Sainsbury's business successful by providing the bookkeeping services and utilities and entertainment expenses as part of the Lease. *Id. at 9.* Stage One argues that these mutual promises formed a separate oral contract apart from the Lease. *Id. at 10.* Stage One also argues that the oral contract is enforceable: (1) because Defendants waived the Lease's merger clause; (2) as a novation; and (3) because it resolves a latent ambiguity in the lease. *Id. at 11.*

Second, Stage One argues that Defendants were obliged to provide the bookkeeping services and pay the utilities and entertainment expenses based on the doctrine of promissory estoppel. *Id. at 12.* Stage One argues that promissory estoppel applies because: (1) Jensen promised to provide bookkeeping services and pay utilities and entertainment expenses; (2) Sainsbury reasonably and foreseeably relied on Jensen's promise by acquiring all of Stage One's stock; and (3) Stage One was damaged as a result of HLS paying "illegitimate

charges[.]" *Id. at 13-14.*

Third, Stage One argues that HLS and ALP should be held jointly and severally liable under all of its claims because the two entities are alter egos of each other. *Id. at 15.* Stage One argues that HLS and ALP, both controlled by Jensen and Westfall, were operated and used interchangeably, and that ALP used HLS as a subterfuge to defraud Stage One by levying illegitimate charges. *Id. at 15-17.*

Fourth, Stage One argues that ALP breached the implied covenant of good faith and fair dealing implied in the Lease by unjustly evicting it from the Stage Coach Inn. *Id. at 19.* Stage One also argues that both ALP and HLS breached the covenant implied in the oral contract by unjustly and dishonestly performing bookkeeping services. *Id. at 20.*

Fifth, Stage One argues that because it trusted HLS to keep its records and pay its expenses, HLS owed it a fiduciary duty of care. *Id. at 21.* It argues that HLS breached this duty by charging Stage One for utilities, entertainment costs, and CPI-adjusted rent, and by failing to bring material facts to Stage One's attention. *Id. at 24-26.* Stage One

contends that a fact issue exists as to whether it actually received complete financial statements from HLS.  *Id. at 28*.

Finally, Stage One argues that its claims are not time barred. Stage One argues that its contract claims are brought within five years of Defendants' alleged breaches of the oral contract.  *Id. at 28-29*.  It also argues that the fraud claims are not barred because Defendants fraudulently concealed and failed to disclose the facts material to these claims.  *Id. at 33-34*.

## III.  SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Id.* at 587 (quotation omitted). In resolving a summary judgment motion, the evidence of the opposing party is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV. DISCUSSION

### A. Breach of Contract

Stage One's breach of contract claim alleges that Stage One and Defendants had an "arrangement" whereby Defendants would perform accounting services and pay bills for Stage One. Stage One alleges in Count I that Defendants breached the contract by levying and funding irresponsible and unjustified charges and by failing and refusing to return corporate records. *ECF 29 at 8.* Stage One contends that Jensen and Sainsbury formed the oral contract in 2002 or 2003 when Sainsbury agreed to acquire 100% of Stage One's stock in exchange for Jensen's promise that Defendants would continue to perform accounting functions for Stage One. *Id. at 3.*

Defendants argue that the purported oral contract for ALP and HLS to provide bookkeeping services to Stage One was an unenforceable gratuitous promise because it lacked consideration to form a binding contract. Consideration is an essential element of a contract. MCA § 28-2-102(4); *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1379 (Mont. 1989). Consideration is "[a]ny benefit conferred

or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by the person...as an inducement to the promisor..."  MCA § 28-2-801; *Carey v. Wallner*, 725 P.2d 557, 559 (Mont. 1986).  Consideration requires that the contracting parties, each as to the other, confer some legal benefit and/or incur some detriment as an inducement to performance.  *Montana Pub. Employee's Ass'n v. Office of Governor*, 898 P.2d 675, 678 (Mont. 1995).

Stage One argues that the consideration it provided to Defendants was Sainsbury's promise to Jensen to purchase from Jensen's family members the remaining outstanding shares of Stage One.  Mutual promises alone are enough to support valid consideration, *Kephart v. Portmann*, 855 P.2d 120, 123 (Mont. 1993).

The Court finds that, at this stage of the proceedings, fact issues preclude summary judgment on the breach of contract claim.  For example, there is a fact issue whether Jensen had the authority, as an agent, to make promises on behalf of HLS.  There also is a fact issue whether Jensen made a promise to Sainsbury – as consideration to

induce Sainsbury to purchase all the shares of Stage One – that HLS would provide bookkeeping/accounting services.  A fact issue also may exist whether Stage One was an intended third-party beneficiary of such a promise.

In its briefing, Stage One sought to expand the claims pled in its Second Amended Complaint by contending that Jensen orally agreed to have ALP pay Stage One's utilities and entertainment expenses.  *ECF 52 at 9*.  But Stage One's breach of contract claim alleges only a breach of the agreement to provide accounting services – the Second Amended Complaint does not allege that the Defendants made, and then breached, a promise to pay either utilities or entertainment expenses. These breach of contract theories arises only in Stage One's brief. Courts generally do not address unpled claims raised for the first time in a summary judgment brief.  *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006) (rejecting legal theory when "the complaint gave the [defendant] no notice of the specific factual allegations presented for the first time in [plaintiff's] opposition to summary judgment"); *see also Nat'l Union of Healthcare Workers v.*

*Kaiser Found. Health Plan, Inc.* 2013 WL 1616103, * 5 (N.D. Cal. 2013) (court declined to address new legal theory not raised in complaint, stating it "will not salvage the pleading based on the contents of the briefing").

Even assuming that the alleged promise to pay utilities was properly pled, this claim on an alleged unexecuted oral contract fails under the language of the Lease and Montana law. The Lease specifically provides that Stage One is responsible for the payment of utilities. *See ECF 49-2 at 2* ("Tenant shall pay to Landlord on the 10th day of each month all utility bills..."). The Lease further provides that it "cannot be modified except in writing, signed by the party to be bound hereby." *ECF 49-2 at 9.* Thus, the alleged oral contract to modify the Lease to provide that the landlord pay utilities is precluded by the plain language of the Lease.

In addition, although Montana law allows for oral modification of a written agreement, the oral contract must be fully executed to be enforceable. MCA § 28–2–1602; *AAA Const. of Missoula, LLC v. Choice Land Corp.*, 264 P.3d 709, 714 (Mont. 2011). Stage One offers no

evidence that Defendants executed the alleged oral agreement to provide Stage One's utilities, and thus such oral agreement may not modify the Lease.

Stage One raises further arguments to support the alleged oral contract for the payment of utilities. It argues that this agreement is enforceable: (1) because Defendants waived the merger clause by allegedly entering into the purported oral agreement; (2) as a novation; and (3) to resolve a latent ambiguity. The Court remains unconvinced. First, Stage One cites no relevant authority supporting its novel position that a merger clause may be waived by purportedly entering into a subsequent oral contract. Even if Stage One could prove this fact, which is in dispute, Montana law disallows modification of a written contract by a subsequent unexecuted oral agreement. For the same reason, Stage One's novation argument fails.

Second, Stage One contends that, in the Lease's language, "Tenant shall pay...all utility bills[,]" is ambiguous because the leased premises were not separately metered and consisted of an open-air floor plan. *ECF 52 at 12*. While this fact may affect the amount of utilities

owed each month, or the process of determining the proper amount, Stage One fails to explain how this evidence creates an ambiguity concerning which party to the Lease, Stage One or ALP, was responsible for the payment of utilities. The Lease unambiguously states that Stage One, and not ALP, was responsible for the payment of utilities for the leased premises.

Finally, to the extent Stage One argues or alleges that the parties orally agreed when entering into the Lease that the "Monthly Rent" amount, defined in Exhibit B to the Lease, included the cost of utilities and entertainment expenses, such evidence is barred by the parol evidence rule. *See, e.g., Anderson Aff. (ECF 53-9) at ¶¶ 12, 14* ("it was pre-established that Stage One's $10,000/month rent included entertainment expenses...bookkeeping services, and utilities"). Where, as here, a contract contains an integration clause, the parole evidence rule "precludes the admission of extrinsic evidence of an unambiguous integrated writing in any situation involving parties to the instrument when the rights and duties created by the document are the dispositive issue." *Richards v. JTL Grp., Inc.*, 212 P.3d 264, 270 (Mont. 2009).

The Lease indicates that Stage One was responsible for utilities, and does not address the payment of entertainment expenses. Any evidence submitted by Stage One of a contemporaneous oral agreement seeking to add to or modify the express terms of the Lease is precluded by the parol evidence rule.

Based on the foregoing, the Court concludes that Defendants are not entitled to summary judgment on Stage One's breach of contract claim, except insofar as that claim alleges breach of contract for failure to pay utilities or entertainment expenses.

## B. <u>Implied Covenant of Good Faith and Fair Dealing</u>

MCA § 28-1-211 defines the implied covenant of good faith and fair dealing as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Every contract, regardless of type, contains an implied covenant of good faith and fair dealing. *Knucklehead Land Co., Inc. v. Accutitle*, Inc., 172 P.3d 116, 121 (Mont. 2007). The covenant is a "mutual promise implied in every contract that the parties will deal with each other in good faith and not attempt to deprive the other party of the benefits of the contract

through dishonesty or abuse of discretion in performance." *Id.* (citation omitted). A breach of the underlying contract is not a prerequisite to a breach of the implied covenant. *Id.*

Stage One contends that its claim for breach of the implied covenant applies to both the Lease and the alleged oral contract for bookkeeping services. It argues that fact issues preclude summary judgment on both claims.

After carefully analyzing the allegations in the complaint, the Court concludes that it cannot summarily dismiss this claim. Stage One alleges in its Count II that Defendants breached the covenant by levying and funding unjust and unfair charges and by "unjustly evicting it, and enriching themselves at the expense of Plaintiff[.]" *ECF 29 at ¶ 19.* Count II also incorporates ¶ 10 of the Second Amended Complaint, which alleges that Stage One was evicted from the leased hotel premises in an attempt to force Sainsbury to sell the business below market value. These allegations give fair notice to Defendants that Stage One seeks redress for an allegedly wrongful eviction of it from the premises, and that such action may violate the covenant of good

faith and fair dealing implied in the parties' Lease.

The parties dispute whether Stage One was evicted, whether Stage One had an opportunity to cure the defaults, and whether the parties attempted to enter into a new lease arrangement. *See Sainsbury Depo. (ECF 49-3) at 20-21.* The parties also dispute whether the lower "Barrel Bar" was part of the Lease, whether it was taken away from Stage One at some point, and whether Stage One was entitled to use the space for outside performers. *See id. at 32-35; Email Jensen to Sainsbury (ECF 53-8).* Finally, there is an outstanding issue with respect to ALP's motivation to begin charging CPI-inflated rent, as evidenced by a January 17, 2009 email whereby Jensen informs Westfall that "[a]t this point it is not my intention to bill [Sainsbury] for the past unpaid CPI amounts. It depends on how he bills me for the flood work." *Email Jensen to Westfall (ECF 53-6) at 17.*

For the foregoing reasons, the Court concludes that fact issues preclude summary judgment on Count II.

### C. Statutes of Limitations Bars Tort Claims

An action generally is barred if it is not commenced within the

appropriate statute of limitations. *Pederson v. Rocky Mountain Bank*, 272 P.3d 663, 665 (Mont. 2012). Stage One's fraud and constructive fraud claims are subject to a two-year statute of limitations. MCA § 27-2-203; *Osterman v. Sears, Roebuck & Co.*, 80 P.3d 435, 440 (Mont. 2007). These claims accrue upon "the discovery by the aggrieved party of the facts constituting the fraud..." MCA § 27-2-203. Because Stage One filed its original complaint on November 16, 2012, *see ECF 1-2*, its fraud and constructive fraud claims are barred if they accrued prior to November 16, 2010. Whether there has been a discovery of facts sufficient to start the running of the statute of limitations is a question of law. *Cartwright v. Equitable Life Assur. Soc. of U.S.*, 914 P.2d 976, 985 (Mont. 1996).

Stage One's negligent misrepresentation and breach of fiduciary duty claims sound in tort and are thus subject to the three-year statute of limitations provided in MCA § 27-2-204. *Cechovic v. Hardin & Associates, Inc.*, 902 P.2d 520, 529 (Mont. 1995) (negligent misrepresentation); *Walstad v. Norwest Bank of Great Falls or Nw. Bank of Great Falls*, 783 P.2d 1325, 1328 (Mont. 1989) (breach of

fiduciary duty). These claims accrue "when all elements of the claim or cause exist or have occurred[.]" MCA § 27-2-102. Based on the filing of the original complaint, Stage One's negligent misrepresentation and breach of fiduciary duty claims are barred if they accrued prior to November 16, 2009.

The Montana Supreme Court has explained the general policy underlying statutes of limitation as follows:

> The primary purpose of statutes of limitations is the suppression of stale claims which, with the attendant passage of time, inhibits a party's ability to mount an effective defense.... The policy underlying the bar imposed by statutes of limitations is, at its roots, one of basic fairness. Our system of jurisprudence is designed to achieve substantial justice through application of the law after the parties have had an opportunity to fully present both sides of a controversy. The failure to bring an action within a reasonable time is clearly not conducive to a full presentation of the evidence nor a search for the truth. Consequently, the law will not reward the plaintiff who sleeps on his or her rights to the detriment of a defendant.

*Gomez v. State*, 975 P.2d 1258, 1263 (Mont. 1999).

The Court looks to the gravamen of Stage One's claims to conduct the statute of limitations analysis. *See Osterman*, 80 P.3d at 443. Each of Stage One's tort claims is based on the contention that Defendants improperly levied and paid unjustified charges against Stage One, even

after Sainsbury directed Defendants to cease. Stage One seeks damages for these allegedly improper charges. *See Pltf's Preliminary Pretrial Stmt (ECF 14) at 12.* For statute of limitations purposes, the Court must determine when Stage One knew, or had reason to know, of the charges it now claims were wrongful, and whether the limitations period should be tolled based on fraudulent concealment.

The undisputed facts demonstrate that, by February 2009, Stage One had reason to know of all of the charges it now claims constitute fraud, constructive fraud, negligent misrepresentation, and breach of fiduciary duty. Thus, these claims fall outside the applicable limitation periods.

Stage One essentially acknowledges that, absent fraudulent concealment, its fraud claims are barred by the statute of limitations when it states: "Defendants' fraudulent representation occurred when contracting with Sainsbury to buyout Jensen's family's interests in Stage One" (*ECF 52 at 30*) – a transaction that occurred before 2004. Stage One applies the same reasoning to its constructive fraud and negligent misrepresentation claims. *Id.*

Additionally, the parties stipulated that "[b]etween May 1999 and August 2011, Stage One, Inc. received monthly statements from its bank in West Yellowstone, Montana." *Scheduling Order (ECF 16) at 3*. The Second Amended Complaint alleges that when Sainsbury conducted an audit of the 2003 to 2006 bank statements shortly before filing this action, he found $588,000 in unauthorized charges made by Defendants in those years. The Second Amended Complaint also alleges that "[b]eginning in the spring of 2007, Stage One's bar manager [Henning] noticed unexpected charges/debits occurring via the monthly summaries from HLS. He called Sainsbury's attention to these unexpected charges." *ECF 29 at ¶ 8*. Henning's deposition testimony corroborates this allegation in the complaint – Henning testified that he first noticed in 2007 or 2008 that the financial statements indicated a rent increase of approximately $2,000, and an account receivable of approximately $99,000 for "club rent due." *Henning Depo (ECF 49-5) at 21-22*. Henning testified that he brought these items to Sainsbury's attention within one or two months from seeing them. *Id. at 22*. When he noticed these charges, he "first

contacted [Sainsbury] to let him make his decision on his course of action." *Id*. It is undisputed that the December 31, 2008 financial statement from HLS listed "Rent Payable - Hotel" in the amount of $99,737.36. *See ECF 49-6 at 2.*

Sainsbury's deposition testimony confirms that Henning brought the CPI inflated rent charges to his attention early in 2009. *Sainsbury Depo. (ECF 49-3) at 6.* According to the complaint, Sainsbury inquired about these charges and was told by Jensen and Westfall that they were past rent escalations permitted by the Lease's CPI adjustment provision. *ECF 29 at ¶ 8.* Sainsbury determined that these escalations required prospective notice and directed Westfall not to fund such charges. *Id*. When asked via interrogatory when Stage One disputed any charges on its monthly accounting statements, Stage One indicated that "Sainsbury began disputing charges via telephone communications with Debra Westfall and Teri Walsh in 2007" and "continued to complain by phone to Westfall and ultimately to Jensen in 2008-2009." *ECF 49-14 at 6.*

In its discovery responses, Stage One identified in an exhibit each

of the "unexpected charges/debits" identified in its complaint that it claims were wrongly charged over the years. *See Discovery Responses (ECF 49-14) at 3; "Exhibit A" to Discovery Responses (ECF 49-16).* This exhibit identifies disputed charges for "Performers" as early as January 2003, and continuing each year through 2011. *ECF 49-16.* It also identifies "Rent over-charge" and other "Not authorized" amounts in 2003, 2004, and 2005. *Id.*

Based on the foregoing evidence, the Court concludes that no genuine issue of material fact exists as to when Stage One's claims accrued. These undisputed facts establish that Stage One knew or should have known of charges it now contends are unsupportable as early as 2003, based on its access to its bank account records, and actively began disputing specific charges in 2007 and 2008. As of February 2009, Stage One had knowledge of the charges for CPI-inflated rent, entertainment expenses, and utilities, and was directly disputing these amounts to Defendants. *See Mobley v. Hall*, 657 P.2d 604, 607 (Mont. 1983) (in fraud action, holding that "where the facts established point to discovery [of the facts constituting the cause of

action] as defined under the statute, summary judgment is appropriate"). The applicable statutes of limitations therefore bar Stage One's fraud and tort claims, unless the limitations period should be tolled due to Defendants' fraudulent concealment of the facts essential to these claims.

Statutes of limitations generally may be tolled if "the defendant has taken action which prevents the injured party from discovering the injury or its cause." MCA § 27-2-102(3)(b). To warrant tolling of the limitations period for fraud, Stage One must have exercised "ordinary diligence" in the discovery of the facts constituting "the fraud or deceptive practice." *Osterman*, 80 P.3d at 441 (citation omitted). The test is whether Stage One had "information of circumstances sufficient to put a reasonable person on inquiry, or [had] the opportunity to obtain knowledge from sources open to [its] investigation." *Id.* (citation and internal quotation marks omitted). For non-malpractice negligence actions, invoking fraudulent concealment requires a showing of "affirmative conduct by the defendant calculated to obscure the existence of the cause of action." *Holman v. Hansen*, 773 P.2d 1200,

1203 (Mont. 1989).

The facts of this case do not support tolling of either limitations period based on fraudulent concealment. On the contrary, Stage One had the opportunity to obtain knowledge of the charges from its bank account records as early as 2003, and from HLS's monthly financial statements beginning in 2007. Stage One has not shown that despite the exercise of "ordinary diligence" it was unable to discover its fraud claims by February 2009. "Mere ignorance of the facts will not suffice to toll the statute of limitations." *Osterman*, 80 P.3d at 441. Furthermore, Stage One has not put forth evidence demonstrating that either Defendant affirmatively took action calculated to obscure from Stage One the existence of the claims it waited to bring until November 2012. The fact that Sainsbury disputed these charges and, as alleged in the complaint, "directed Westfall not to fund such charges" shows that Stage One had both access to and actual knowledge of the allegedly wrongful charges.

Stage One argues that fraudulent concealment is nonetheless applicable because Defendants owed it a fiduciary duty and failed to

affirmatively disclose facts relevant to its claims. The Court is not convinced. Apart from vaguely alleging that Defendants failed "to disclose matters relevant to Plaintiff's interest[,]" *ECF 52 at 33*, Stage One does not indicate what it was that Defendants failed to disclose, assuming they owed such a duty, that would have revealed the existence of Stage One's causes of action. The Court rejects this theory, and finds that fraudulent concealment does not exist to toll the statutes of limitations for Stage One's fraud and tort claims.

Finally, Stage One argues that its fiduciary duty claims are not time-barred because HLS wrongfully paid charges within the limitations period, and these claims arose upon said payments, not earlier. The "continuing tort" theory applies in cases where the tortious act can be reasonably abated. *Palmer v. Quinn*, 318 P.3d 174 (table) (Mont. 2013) (citing *Burley v. Burlington N. & Santa Fe Ry. Co.*, 273 P.3d 825 (Mont. 2012)). In Montana, this theory has been applied only to trespass and nuisance cases. *Id.; see also Gomez*, 975 P.2d at 1263 (rejecting continuing tort theory in products liability and negligence case). In *Gomez*, the supreme court declined to apply the continuing

tort doctrine in a chemical exposure products liability and negligence case, finding that the plaintiff was aware of his injuries, of the cause of those injuries, and of the fact that he had a cause of action against the defendant, yet failed to take action on his claims until after the statute of limitations had passed. 975 P.2d at 1263. The court stated:

> In essence, Gomez has slept on his rights and should not be rewarded under the law for his lack of diligence. Furthermore, to apply a continuing tort theory to delay the beginning of the limitations period until the last injurious exposure to a harmful substance, thereby allowing and even encouraging injured persons to remain in harmful conditions for an indeterminate amount of time, could delay the running of the limitations period indefinitely. We previously have concluded that such a result is unacceptable.

*Id.* Moreover, "a claimant's lack of knowledge about the potential extent of her injuries, or damages, does not conceal the facts constituting the claim." *Hartford v. Gen. Motors Corp.*, 77 P.3d 551 (table) (Mont. 2003) (internal quotation marks omitted). The supreme court has held that "it is not necessary to know the total extent of damages that an act causes to begin the running of the statute of limitations." *Id.* (quoting *E.W. v. D.C.H.*, 754 P.2d 817, 820 (Mont. 1988), *superseded by statute on other grounds*); *see also Falls Sand &*

*Gravel Co. v. W. Concrete, Inc.*, 270 F. Supp. 495, 504 (D. Mont. 1967) (inability to fully compute damages does not toll the statute).

Stage One cites no authority supporting an extension of the continuing tort doctrine to its claims here. Stage One has not asserted that any of these charges were first imposed after November 2009. This type of continuing pattern of charges does not support application of the continuing tort doctrine. *See Gomez,* 975 P.2d at 1261-63 (Mont. 1999).

Stage One's fraud and constructive fraud claims accrued prior to November 16, 2010, and its negligent misrepresentation and breach of fiduciary duty claims accrued prior to November 16, 2009. These claims are untimely and barred by the statute of limitations. Other disputed charges that were ongoing and occurring within the limitations period does not save Stage One's claims – such charges constitute continuing damages and do not constitute separate causes of action.

### E.    Punitive Damages, Constructive Trust

Apart from arguing that Stage One's claims for punitive damages and constructive trust rely on the viability of its first five claims, Defendants offer no further argument or authority to support dismissal of these claims.  Thus, in light of the Court finding viable Stage One's claim for breach of the oral bookkeeping services contract and breach of the covenant implied in the Lease, the Court finds that Defendants have not demonstrated their entitlement to summary judgment on the punitive damages and constructive trust claims.

## V.    CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment *(ECF 47)* is GRANTED in part and DENIED in part, as follows.

(1) The motion is DENIED as to the claim for Breach of Contract and/or Quasi Contract (Count I) except insofar as the claim concerns a breach of the alleged oral contract for the payment of utilities and entertainment expenses;

(2) The Motion is DENIED as to the claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II);

(3) The Motion is GRANTED as to the claims for Breach of Fiduciary Duty (Count III), Negligent Misrepresentation (Count

IV), and Fraud, Deceit and/or Constructive Fraud (Count V); and

(4) The Motion is DENIED as to the claims for Punitive Damages (Count VII) and Constructive Trust (Count VIII).

DATED this 10th day of July, 2014.


**/s/ Carolyn S. Ostby**
United States Magistrate Judge